UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH DONNEY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JEFFREY BEARD, et al.,<br><br>　　　　　Defendants. | No. 2:15-cv-2530-JAM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner who, represented by counsel, brings this action pursuant to 42 U.S.C. § 1983. He filed the immediate complaint through his counsel on December 7, 2015. ECF No. 1. Defendants have filed a motion for summary judgment (ECF No. 27), plaintiff has responded (ECF No. 29), and defendants have replied (ECF No. 30). On April 26, 2017, the court held a hearing on the motion. For the reasons stated hereafter, the court recommends that defendants' motion be granted.

**I.　Background**

Plaintiff states that, prior to his incarceration, he was a federal prosecutor. ECF No. 1 at 1. The complaint does not specify what division of the federal government plaintiff worked in, but documents attached to his opposition indicate that he worked for the Federal Trade

/////

/////

Commission.[1] ECF No. 29-2 at 4. Plaintiff claims that, as a result of his former position as a "prosecutor," other inmates have made "physical attacks and attempts on his life." ECF No. 1 at 3. The complaint only describes one such attack in any appreciable detail.[2]

Plaintiff states that, on March 30, 1997, he was in the Pleasant Valley State Prison ("PVSP") day room with approximately one-hundred and fifty other inmates. *Id*. at 3. He claims that "the mass media" had already identified him as a former prosecutor and, as a consequence, an inmate named Shelton attempted to murder him by slitting his jugular vein. *Id*. Plaintiff was treated for his injury and, on May 23, 1997, was transferred to California Men's Colony- East ("CMCE"). *Id*. at 4.

Upon arrival at CMCE, plaintiff claims to have reached a "mutual understanding" with Associate Warden Ted McAlister (who is not a party to this suit). *Id*. Plaintiff states he offered not to take legal action against the California Department of Corrections ("CDCR") for failing to protect him from the 1997 attack at PVSP if, in exchange, McAlister would protect him from further attack by assigning him to a single-man cell. *Id*. The complaint provides that this "mutual understanding" was entirely verbal and never committed to writing. *Id*. Plaintiff recounts that he was brought to McAlister's office shortly after arriving at CMCE. *Id*. McAlister purportedly asked after Plaintiff's litigative intentions by inquiring "Are you going to do your Ralph Nader thing?" *Id*. Plaintiff states that he responded by saying "Let me relieve you of those concerns. I want to do my time as safely as possible. I want to stay here at CMC-East. So, if you leave me alone, I'll leave you alone." *Id*. At this, McAlister allegedly pounded his desk enthusiastically and said "Done!" *Id*. The complaint does not provide what specific terms, if any, this verbal

---

[1] Plaintiff's counsel confirmed his client's former employment at the motion hearing.

[2] Plaintiff cites two other attacks but provides very little detail with respect to these incidents. He claims that, on an unspecified date and at an unspecified prison, an inmate named Russell Schonburg descended from an upper bunk and attempted to strangle Plaintiff while he slept. ECF No. 1 at 4. On another occasion – again without reference to date or location – an inmate named "Tron" Armstrong allegedly attacked plaintiff several times before "the situation was rectified." *Id*. Plaintiff also states that he suffered various unspecified, unreported attacks by unnamed inmates. *Id*. He has not alleged any facts tying these attacks to his prosecutorial background.

agreement was construed to contain. Notably absent are specific terms as to how plaintiff was to be 'left alone', how long he was to be 'left alone', and whether this agreement was intended to extend beyond McAlister's jurisdiction at CMCE.

Plaintiff states that he was housed to his satisfaction in a single-man cell at CMCE until, on an unspecified date, the CDCR lowered his inmate designation from Level III to Level II. *Id*. After this change of status, he was transferred to the California Health Care Facility ("CHCF"), where defendant Brian Duffy acted as warden. *Id*. at 2, 4. On October 6, 2015 and, while incarcerated at CHCF, plaintiff's request for an "S-Suffix" or single-man cell designation was denied. *Id*. at 3.

Based on the foregoing facts, plaintiff's complaint raises two claims. First, he alleges that defendants violated his Eighth and Fourteenth Amendment rights by declining to grant him single-man cell designation. *Id*. at 6. He claims that his assignment to a double cell or dormitory places him "under conditions posing a risk of harm." *Id*. Second, he alleges that defendants violated his due process rights by failing to honor the "mutual agreement" he reached with Warden McAlister at CMCE. *Id*.

In terms of relief, plaintiff requests a permanent injunction which provides that: (1) defendants are prohibited from transferring plaintiff to a double cell or dormitory housing; (2) defendants are prohibited from placing plaintiff in a dangerous prison population setting; (3) defendants shall exercise their administrative authority to code plaintiff as a single-cell ("S" suffix) inmate; and (4) defendants shall continue adhering to the agreement struck with Warden McAlister. ECF No. 1 at 8. Plaintiff also requests reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and any other relief the court deems just. *Id*.

## II. Applicable Legal Standards

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury

3

to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

5

*Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

### B. Deliberate Indifference for Failure to Protect

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment dictates that prison officials provide inmates with "humane conditions of confinement" which include "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of the inmates." *Id*. (internal quotation marks omitted). The Supreme Court has held that there are two requirements to establish a prison official's violation of the Eighth Amendment. "First, the deprivation alleged must be, objectively, sufficiently serious . . . a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id*. at 834. In the context of a failure to prevent harm claim, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." *Id*. In the prison context, the relevant state of mind is deliberate indifference. *Id*. To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

## III. Analysis

Defendants raise four arguments in their motion for summary judgment. First, they argue that plaintiff failed to exhaust his administrative remedies before filing this suit. ECF No. 27 at 7-8. Second, defendants contend that they were not deliberately indifferent to plaintiff's safety needs. *Id*. at 8-9. They state that plaintiff has failed to present evidence of a "particularized fear based upon prior threats" or evidence that defendants were aware of any particular risk to his safety. *Id*. at 9. Third, defendants argue that plaintiff will be unable to establish that he is entitled to his desired permanent injunction. *Id*. at 11-13. Fourth and finally, defendants argue that there is no contract between themselves and the plaintiff and his breach of contract claim must fail. *Id*. at 13-14.

### A. <u>Failure to Exhaust Administrative Remedies</u>

Defendants argue that, at the time plaintiff filed this action, his administrative remedies were not exhausted because he had not yet received a final, third level appeal response. ECF No. 27 at 8. Plaintiff filed a grievance requesting single-cell designation on October 6, 2015. ECF No. 27-3 at 83-84. Therein, he alleged, as he does in this suit, that he was physically endangered by other inmates who were aware of his prosecutorial past. *Id*. at 83. The grievance bypassed the first level of review (*Id*. at 84) before being denied on the merits by Warden Duffy at the second level on October 27, 2015. *Id*. at 91-93. The second level denial advised plaintiff that he could, if he desired, file a third level appeal by completing the relevant portion of the "602 Form" and mailing that form to Chief of the Office of Appeals. *Id*. at 93. Plaintiff submitted his third level appeal on November 20, 2015 wherein he alleged that Duffy, by way of his grievance denial, was conspiring to have plaintiff attacked or killed. *Id*. at 85. The director's office issued a third level decision denying the grievance on February 18, 2016. *Id*. at 94-95. The third level decision advised plaintiff that his administrative remedies on this issue were exhausted by this final denial. *Id*. at 95. The immediate complaint was filed on December 7, 2015 – approximately two months before the third level denial was issued. ECF No. 1.

Plaintiff responds by arguing that prison officials failed to comply with their own procedural rules, thereby excusing his exhaustion requirement. ECF No. 29 at 4-5. He states that

his initial grievance required emergency processing which, pursuant to Cal. Code Regs. tit. 15, § 3084.9(a)(1), entitled him to bypass first level review and to receive a second level decision within five working days. *Id*. at 5. He claims that the second level decision was not issued within five working days and exhaustion must be excused on that basis. ECF No. 29 at 5. California Code of Regulations, Title 15, Section 3084.9(a)(1) provides an exception to the normal appeals process for emergency appeals:

> (a) Emergency appeals. Emergency appeals should not be used by inmates or parolees as a substitute for verbally or otherwise informing staff of an emergency situation requiring immediate response.
>
> (1) When circumstances are such that the regular appeal time limits would subject the inmate or parolee to a substantial risk of personal injury or cause other serious and irreparable harm, the appeal shall be processed as an emergency appeal. Emergency circumstances include, but are not limited to:
>
> (A) Threat of death or injury due to enemies or other placement concerns.
>
> (B) Serious and imminent threat to health or safety.

Cal. Code Regs. tit. 15, § 3084.9(a)(1). As plaintiff correctly notes, emergency appeals bypass first level review and entitle the inmate to a second level decision within five working days. Cal. Code Regs. tit. 15, § 3084.9(a)(4).

Per their reply, defendants argue that this appeal was never accepted for emergency processing. They emphasize that plaintiff's appeal indicated only a vague fear of harm and, absent the articulation of some specific threat to his safety, emergency designation was not appropriate. As evidence of plaintiff's inability to articulate a particularized harm, they point to an interview conducted with one Sergeant Castro on December 21, 2015. ECF No. 30 at 5; ECF No. 27-2 at 10 ¶61. The parties do not dispute that, during the interview, plaintiff stated that: (1) his current cell partner had not threatened him; (2) he did not have specific enemy or safety concerns in his current cell; and (3) that he could continue in his current cell assignment without incident. ECF No. 29-1 at 12 ¶61.

The court notes that the pertinent emergency processing regulations grant the appeals coordinator discretion to determine whether emergency processing is warranted, but also state

8

1 | that the coordinator is required to notify the prisoner in the event that emergency processing is
2 | rejected. Cal. Code Regs. tit. 15, § 3084.9 (a)(3). Here, there is no indication in the record that
3 | plaintiff ever received notification that his appeal would not receive emergency processing.
4 | Additionally, the interview relied on by defendants for the proposition that plaintiff was not under
5 | immediate threat occurred after the five day time-limit for an emergency processing decision had
6 | already expired. As such, defendants could not have properly relied upon it to determine that
7 | plaintiff's appeal was non-emergent.

The exhaustion requirement in the Prison Litigation Reform Act creates an affirmative defense which defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). This includes proving that "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Prison officials' failure to abide by regulations governing the appeals process can render that process unavailable for the purposes of exhaustion. *See Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding that the failure to respond to a grievance within the policy time limits renders remedy unavailable). Based on the foregoing, the court finds that defendants have failed to carry their burden of showing that administrative remedies were available to plaintiff and that he failed to exhaust those available remedies.

### B. <u>Deliberate Indifference</u>

Defendants' second argument – that they did not disregard any substantial risk of harm to the plaintiff – fares better. As noted above, plaintiff's complaint alleges that he will be injured or killed if he is placed in any setting less protective than a single-man cell. ECF No. 1 at 5. The only articulated basis for this contention, however, is an attack that occurred more than twenty years ago at an institution different from the one he is currently housed at. *Id*. at 3-4. Documents provided by defendants show that prison officials concluded, after reviewing the 1997 attack, that it was motivated by an argument with another inmate concerning inmate job assignments in the unit chapel rather than plaintiff's former status as a prosecutor. ECF No. 27-3 at 65. And although plaintiff disputes prison officials' determinations regarding the 1997 attack (ECF No.

29-1 at 12 ¶ 62), defendants would still be entitled to rely on these findings to establish that they did not act with deliberate indifference in rejecting plaintiff's claim that his past vocation placed him at risk in a shared cell at his current facility.

Additionally, the parties do not dispute that plaintiff has been double-celled since September 2015. ECF No. 27-3 at 111; ECF No. 29-1 at 13 ¶63. It is also undisputed that, since that date, plaintiff has not reported any incidents of in-cell violence. ECF No. 27-2 at 11 ¶63; ECF No. 29-1 at 13 ¶63. At the hearing, plaintiff's counsel noted that he was not aware of any inmates at CHCF making threats against plaintiff based on his past employment. ECF No. 33 at 4. Nor could counsel identify any particular party or inmate that might constitute specific threat to plaintiff, nor explain how plaintiff's employment years ago with the Federal Trade Commission would somehow place him at risk from inmates at the institution where he is confined.

In short, plaintiff has not produced evidence upon which a reasonable fact finder could conclude that defendants were deliberately indifferent to his safety.

### C. <u>Plaintiff's Contract Claim</u>

Finally, having dismissed plaintiff's federal claim, the court should decline to exert supplemental jurisdiction over his state law contract claim. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.").

The court notes that plaintiff does characterize this claim as a violation of his due process rights, but this theory is unavailing. It is true that the Ninth Circuit has held that "a contract can create a constitutionally protected interest." *San Bernardino Physicians' Servs. Medical Group v. County of San Bernardino*, 825 F.2d 1404, 1407-1408 (9th Cir. 1987). "The prime protected category, which has supplied nearly all of the successful contract-based section 1983 actions, is that of employment contract." *Id.* at 1409. The contract at issue here bears no resemblance whatsoever to an employment contract and the court is unaware of any authority holding that a

contract governing a prisoner's housing assignment gives rise to a constitutionally protected interest.

### D. Equitable Relief

Having determined that plaintiff's claims should be dismissed, the court finds it unnecessary to consider defendants' argument that plaintiff is not entitled to the injunctive relief he seeks. In the event that these recommendations are declined in whole or in part and claims survive for trial, it would be inappropriate to decide this issue on summary judgment. *See Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 2014 U.S. Dist. LEXIS 55516, *37 (D. Del. 2014) (holding that "the question of whether a permanent injunction is an appropriate remedy is better decided after trial . . . .").

## IV. Recommendation

For the reasons stated above, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 27) be granted, that judgment be entered in defendants' favor, and that the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 5, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE